UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANARBEK MYSAEV, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-0371-B |
| | § | |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, UR MENDOZA JADDOU, and KIRT THOMPSON, | § § § § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants United States Citizenship and Immigration Service, Ur Mendoza Jaddou, and Kirt Thompson (collectively, "USCIS")'s motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6) (Doc. 7). For the following reasons, the Court **GRANTS** USCIS's motion under Rule 12(b)(1) and Rule 12(b)(6) and **DISMISSES** Plaintiff Anarbek Mysaev ("Mysaev")'s Claim One **WITHOUT PREJUDICE** and Claim Two **WITH PREJUDICE.**

I.

BACKGROUND

This is an immigration case. Mysaev is a citizen of Kyrgyzstan who currently resides in Brooklyn, New York. Doc. 1, Compl., ¶ 1. Mysaev was granted asylum on December 6, 2019, and filed an I-485 Application for Adjustment of Status on September 10, 2020. *Id.* ¶¶ 2–3. Mysaev completed the initial biometric screening portion of the application, but USCIS has taken no other

-1-

action on his application since. *Id.* ¶¶ 4–7. Seventeen months later, on February 15, 2022, Mysaev brought this suit seeking to compel USCIS to adjudicate his I-485 application. *Id.* ¶¶ 9–10.

Mysaev filed suit in this Court asserting federal-question jurisdiction under the Administrative Procedure Act ("APA") and the Mandamus Act for his claim that USCIS unlawfully withheld or unreasonably delayed adjudication of his application ("Claim One"). *Id.* ¶¶ 13, 15–21. Mysaev also seeks redress for the purported violation of his Due Process right to fundamental fairness in administrative proceedings ("Claim Two"). *Id.* ¶¶ 22–25. On April 25, 2022, USCIS filed the instant motion to dismiss Claim One under Federal Rule of Civil Procedure 12(b)(1) and Claim Two under Rule 12(b)(6). Doc. 7, Defs.' Br. The motion is fully briefed and ripe for review.

## II.

## LEGAL STANDARDS

A.   *Federal Rule of Civil Procedure 12(b)(1)*

"Federal courts are courts of limited jurisdiction." *MacKenzie v. Castro*, 2016 WL 3906084, at *2 (N.D. Tex. July 19, 2016) (quoting *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998)). For that reason, they can adjudicate claims only when subject-matter jurisdiction "is expressly conferred by the Constitution and federal statute." *Armstrong v. Tygart*, 886 F. Supp. 2d 572, 584 (W.D. Tex. Aug. 20, 2012). Federal Rule of Civil Procedure 12(b)(1) provides the vehicle through which a party may challenge that jurisdiction. *Id.*

"A Rule 12(b)(1) motion can mount either a facial or factual challenge." *MacKenzie*, 2016 WL 3906084, at *2. A facial challenge occurs "[w]hen a party files a Rule 12(b)(1) motion without

including evidence." *Id*. A factual challenge, by contrast, occurs when a party supports its Rule 12(b)(1) motion with evidence. *Id*.

In either case, the burden of proof "is on the party asserting jurisdiction." *Id*. (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam)). So, plaintiffs must prove jurisdiction exists. Here, USCIS filed its Rule 12(b)(1) motion without any additional evidence, so it is considered a facial attack. Thus, the Court considers only the sufficiency of "the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). And "[i]f those jurisdictional allegations are sufficient, the complaint stands." *Id*.

B.  *Federal Rule of Civil Procedure 12(b)(6)*

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

The Court first addresses whether it has subject-matter jurisdiction over Claim One under the APA or the Mandamus Act. Finding it does not, the Court dismisses Claim One without prejudice and proceeds to consider whether Claim Two has states a valid claim under the Due Process Clause. Since Mysaev has not identified a protected life, liberty, or property interest, the Court dismisses Claim Two with prejudice.

A.   *The Court Lacks Subject-Matter Jurisdiction Over Claim One*

"The APA generally waives the Federal Government's immunity from a suit 'seeking relief other than money damages and stating a claim that an agency or officer or employee thereof acted or failed to act in an official capacity or under color of legal authority.'" *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702). The APA grants "[a] person suffering legal wrong because of agency action . . . judicial review thereof,"

5 U.S.C. § 702, where "'agency action' include[s] the . . . failure to act."[1] 5 U.S.C. § 551(13). The APA also requires that, "within a reasonable time, each agency shall proceed to conclude a matter presented to it," 5 U.S.C. § 555(b), and courts can "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). But judicial review is barred when the relevant statute precludes it or when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). "The principal purpose of the[se] APA limitations . . . is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *Norton v. S. Utah Wilderness All. (SUWA)*, 542 U.S. 55, 66 (2004). Thus, "a court [can] only . . . compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing how it shall act." *SUWA*, 542 U.S. at 64 (internal quotations omitted).

USCIS argues that the Court does not have jurisdiction to review the adjudication of Mysaev's I-485 application because the Fifth Circuit, in *Bian v. Clinton*, held that 8 U.S.C. § 1252(a)(2)(B) of the Immigration and Nationality Act ("INA") prohibits judicial review. Doc. 7, Defs.' Br., 5. The statute provides that

> [n]otwithstanding any other provision of law (statutory or nonstatutory), including . . . [the Mandamus Act] . . ., and except as provided in subparagraph (D), no court shall have jurisdiction to review
> > (i) any judgment regarding the granting of relief under section . . . 1255 of this title or

---

[1] Failures to act are "properly understood as failure to take an *agency action*—that is, a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13)." *Norton v. S. Utah Wldn. All.*, 542 U.S. 55, 62 (2004). These agency actions include "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof." 5 U.S.C. § 551(13). Mysaev challenges USCIS's failure to make an order "within a reasonable time." Doc. 10, Pl.'s Resp., 6 (quoting 5 U.S.C. § 555(b)).

> (ii) any other decision or action . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security . . .

8 U.S.C. § 1252(a)(2)(B).

USCIS argues this statute strips this Court of jurisdiction because pace of adjudication is a discretionary *action*. Doc. 11, Defs.' Br., 5 (citing *Bian v. Clinton*, 605 F.3d 249, 253 (5th Cir. 2010)) (vacated as moot). Mysaev responds that if pace of adjudication is discretionary then 5 U.S.C. § 555(b) is "hollow and unenforceable," and that the existence of "within a reasonable time" in 5 U.S.C. § 555(b) makes pace of adjudication at least partially non-discretionary. Doc. 10, Pl.'s Resp., 7. USCIS replies that the pace of adjudication is included as part of the regulations that USCIS has statutory discretion over. Doc. 11, Defs.' Reply, 2 (citing *Bian*, 605 F.3d at 253 and referencing 8 U.S.C. § 1255(a)). According to USCIS, this Court is precluded by *Bian* from reviewing pace of adjudication altogether.

The plaintiff in *Bian* was a Chinese national whose I-485 application had been pending for three years before she filed suit requesting the court to compel adjudication of her application. *Bian*, 605 F.3d at 251. While Bian was eligible for an adjustment of status, she had not received it because USCIS did not have any available visas available for her Employment-Based Category. *Id.* The *Bian* court explained that, under those facts, "Bian contest[ed] . . . USCIS's decision to adjudicate her application in compliance with regulations that [were] clearly within the agency's discretion to establish [under § 1255(a)], [and thus] the federal courts [were] without jurisdiction to entertain her claim." *Id.* at 254. The Fifth Circuit emphasized that forcing adjudication of Bian's application despite the unavailability of a visa number would violate a clear statutory prerequisite to adjudication

under 8 U.S.C. § 1255(a)(3).[2] *Id.* at 253. The Fifth Circuit's reasoning comports with the *SUWA* Court's interpretation of the APA's purpose: "to protect agencies from undue judicial interference with their *lawful* discretion." *SUWA*, 542 U.S. at 66 (emphasis added); *see also Lujan v. Nat'l. Wildlife Fed'n*, 497 U.S. 871 (1990). The court further held that "USCIS undeniably has discretion to adjudicate applications 'under such regulations as [the agency] may prescribe,' providing yet another barrier to the exercise of federal jurisdiction under the APA." *Id.* at 255 (referencing pace of adjudication generally). But the Fifth Circuit's opinion in *Bian*, and the district court's underlying opinion, were later vacated as moot. *Bian v. Clinton*, 2010 WL 3633770, *1 (5th Cir. Sept. 16, 2010).

The Fifth Circuit has held that vacated opinions are generally without precedential value. *Ridley v. McCall*, 496 F.2d 213 (5th Cir. 1974) ("Subsequently the judgment of this Court was vacated and remanded for determination of whether the case was moot . . . and thereafter this Court by order vacated the judgment of the District Court with directions to dismiss the complaint as moot . . . [and] [c]onsequently [the prior decision in this case] has no precedential value."). But courts in this circuit have been split on whether to follow *Bian* regarding judicial review of pace of adjudication. *Compare M.J.L. v. McAleenan*, 420 F. Supp. 3d 588, 596 n.9 (W.D. Tex. Nov. 13, 2019) ("[*Bian*] is not controlling precedent because it was vacated as moot."); *Pacharne v. Dep't of Homeland Sec.*, 565 F. Supp. 3d 785, 803 (N.D. Miss. Sept. 30, 2021) ("In considering *Bian*, this Court first notes that the Fifth Circuit specifically vacated its substantive decision, as well as the district's court decision in the case."), *with Chuttani*, 2020 WL 7225995, at *3 n.22 ("[T]he Court holds that [*Bian*] is still binding precedent. At the very least, it is highly persuasive."); *Smith v. United*

---

[2] 8 U.S.C. § 1255(a)(3) requires "an immigrant visa [be] immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a)(3).

*States Dep't of Homeland Sec.*, No. 3:21-cv-2694-E, Doc. 21, 3 (N.D. Tex. Apr. 13, 2022) ("While the Fifth Circuit vacated [*Bian*] due to mootness, its logic remains sound and persuasive.").

Regardless, the Court need not resolve *Bian's* precedential value or the non-discretionary action issue today because, as the Court finds below, even if the INA does not strip the Court of jurisdiction, Mysaev has not satisfied the threshold requirements for jurisdiction under the APA or the Mandamus Act.

### 1. The APA Does Not Supply the Court with Subject-Matter Jurisdiction[3]

The APA does not provide an independent basis for subject-matter jurisdiction. *See Califano v. Sanders*, 430 U.S. 99, 107 (1977). But the APA, in conjunction with this Court's federal-question jurisdiction, 28 U.S.C. § 1331, may vest the Court with jurisdiction to "compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1); *Alkenani v. Barrows*, 356 F. Supp. 2d 652, 656 (N.D. Tex. Feb. 14, 2005). Thus, jurisdiction under the APA is appropriately exercised only if Mysaev can establish that the Defendants had a clear, non-discretionary duty to adjudicate his I-485 application within a certain period. *Chuttani*, 2020 WL 7225995, at *2; *Mehalingam v. United States Citizenship & Immigr. Servs.*, No. 3:20-cv-3651-M, Doc. 13, 8 (N.D. Tex. Jan. 21, 2021) (collecting cases and holding "that the threshold requirements of stating a claim under the APA and the Mandamus Act, including whether plaintiff has a clear right to relief, are jurisdictional, and therefore are appropriately considered to determine whether subject-matter jurisdiction exists"). The

---

[3] Because "a federal court always has jurisdiction to determine its own jurisdiction," the Court engages with the merits of the claim to determine if the Mysaev has shown a legal wrong, which is the threshold requirement to grant jurisdiction under the APA. *United States v. Ruiz*, 536 U.S. 622, 628 (2002), *see also Chuttani*, 2020 WL 7225995, at *2; *Mehalingam*, No. 3:20-cv-3651-M, Doc. 13, 8.

Court must then "engage with the merits of [Mysaev's] claims at the jurisdictional stage" to determine if jurisdiction is appropriate. *Chuttani*, 2020 WL 7225995, at *2.

Mysaev structures his argument according to the "TRAC factors,"[4] as set forth by *Telecomms. Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984). While the Court does not recognize these factors as binding, it does find the structure helpful to address Mysaev's arguments. *See Chuttani*, 2020 WL 7225995, at *3 n.26.

    i.    *Rule of reason*

USCIS has adopted a "first-in, first-out" ("FIFO") processing system and seeks to publish that information on its website to provide an estimated notice of the expected processing time for applicants. *See* Doc. 8, Defs.' App., ¶ 3; Doc. 11, Defs.' Reply, 5–6. While Mysaev concedes that the FIFO system is a rule of reason, Doc. 10, Pl.'s Resp., 11, the Court finds it pertinent to explain the weight and deference given to this "rule."

"Federal courts defer to an agency's interpretation of its own regulation if its reading is reasonable, the interpretation represents the agency's authoritative or official position, rather than a mere ad hoc statement, the agency's interpretation implicates its substantive expertise, and it

---

[4] The *TRAC* court stated that when courts are evaluating an unreasonable delay they should consider the following factors: "(1) the time agencies take to make decisions must be governed by a 'rule of reason'; (2) where Congress has provided a timetable . . . that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; (6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'" *Telecomms. Rsch. & Action Ctr.*, 750 F.2d at 80 (citations omitted). The Court first addresses the first two factors and then proceeds to address factors three, four, and five together since the Court can address the impact to Mysaev's claimed health and welfare interests as well as the effects of expediting adjudication together. The Court does not address the bad-faith sixth factor because no impropriety has been alleged or argued. *See* Doc. 10, Pl.'s Resp.

reflects fair and considered judgment." *Kolluri*, 2021 WL 183316, at *3 (citing *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415–17 (2019)). This deference is even greater in issues involving complex political questions like immigration. *I.N.S. v. Aguirre-Aguiree*, 526 U.S. 415, 425 (1999). Thus, since no specific statutorily prescribed adjudication deadline exists, the Court gives deference to USCIS's interpretation of a reasonable immigration processing time. *Bian*, 605 F.3d 249 at 253.

In light of this deference, time is not the only factor relevant to evaluating the reasonableness of a delay, especially in the context of the COVID-19 pandemic and political policy changes. *Chuttani*, 2020 WL 7225995, at *3; *Kolluri*, 2021 WL 183316, at *5. But even so, "[t]he Court is reluctant to hold unreasonable any delay in adjudicating . . . that's less than the *upper* limit of [USCIS's] current estimated processing time for that particular application form." *Chuttani*, 2020 WL 7225995, at *4 (emphasis added). USCIS has decided that FIFO is the best process to adjudicate adjustment-of-status applications while balancing the unique political interests in the context of the COVID-19 pandemic and other factors "which courts lack both expertise and information to resolve." *SUWA*, 542 U.S. at 66.

Thus, the Court finds that, under these facts, USCIS's FIFO process supports a reasonable pace of adjudication that "implicates [USCIS's] substantive expertise, and . . . reflects fair and considered judgment." *Kolluri*, 2021 WL 183316, at *3. As USCIS points out, historical processing times are constantly fluctuating because of factors like, "the availability of Immigration Services Officers to handle the applications, the number of expedite requests, or changes in agency priorities." Doc. 8, Defs.' App., ¶ 4. USCIS also explains how global policy impacts have greatly impacted the wait times and number of applicants. *Id.* Thus, while the Court is empathetic to Mysaev's situation,

his wait time of twenty-two months—while the current wait-time estimate is twenty-five to fifty-two months—falls short of an unreasonable delay. Doc. 8, Defs.' App., ¶ 5.

> ii.   *Congressional timetable*

Mysaev further argues that Congress has prescribed an expected statutory timetable of 180 days in 8 U.S.C. § 1571, which states

> (a) Purposes
> The purposes of this subchapter are to—
>> (1) provide the Immigration and Naturalization Service with the mechanisms it needs to eliminate the current backlog in the processing of immigration benefit applications within 1 year after October 17, 2000, and to maintain the elimination of the backlog in future years; and
>> (2) provide for regular congressional oversight of the performance of the Immigration and Naturalization Service in eliminating the backlog and processing delays in immigration benefits adjudications.
> (b) Policy
>> It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition.

8 U.S.C. § 1571.

The statute recognizes the current issues with the pace of adjudication regarding immigration application processing and pronounces a goal to provide agencies with the tools needed to eliminate and maintain the elimination of the backlog. 8 U.S.C. § 1571(a). Courts have been critical of construing this provision as a mandate to adjudicate all applications within 180 days. *Bian*, 605 F.3d at 255; *Chuttani*, 2020 WL 7225995, at *3; *Kolluri*, 2021 WL 183316, at *5; *Verma v. United States Citizenship & Immigr. Servs.*, 2020 WL 7495286, at *7 (holding that while the timeline may be endorsed by Congress it falls well short of a mandate). Turning this "sense" of Congress into a

mandate would "transmogrify an aspiration into a deadline," and allow Mysaev and others to impermissibly expand § 1571 to claim any immigration benefit application in review for longer than 180 days as unreasonably delayed. *Chuttani*, 2020 WL 7225995, at *3 (adopting the *Bian* court's reasoning regarding the "sense" of Congress).

Further, the statute states a purpose of "provid[ing] for regular congressional oversight," which indicates that Congress is evaluating the wait times and will enact laws as necessary to address the pace of adjudication involving immigration. 8 U.S.C. § 1571(a)(2). This is the work of the "halls of Congress, where programmatic improvements are normally made," that the *SUWA* Court described. *SUWA*, 542 U.S. at 64.

In sum, because a 180-day processing mandate cannot adequately assess the factors that affect the pace of adjudication, and because the statute itself indicates a goal, not a mandate, for eliminating the backlog through Congressional oversight, the Court will not hold that any delay over 180 days is per se unreasonable.

                *iii.*     *Interests prejudiced and effect of expediting adjudication*

The Court addresses Mysaev's prejudice arguments together with his arguments regarding the effects of expediting adjudication because they are closely intertwined. Mysaev argues that he has been unfairly prejudiced because he has not had a chance to claim lawful permanent resident status and the ability to sponsor family members for residency in the United States. Doc. 1, Compl., ¶ 25. But, as USCIS points out, the delays that Mysaev claims are prejudicing him impact the other 11,442 people that filed applications before Mysaev. Doc. 8, Defs.' App., ¶ 5. If the Court were to either adjudicate or compel adjudication of Mysaev's claim, it would unfairly prejudice those who

have been waiting longer than Mysaev and create a race to the courthouse, substituting the federal courts as adjudicators of immigration applications—a role Congress conferred to USCIS. *See Kolluri*, 2021 WL 183316, at *6 (citing *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 366 F.3d 1094, 1100 (D.C. Cir. 2003)). These externalities severely undercut Mysaev's arguments concerning prejudice and the effect of expediting adjudication. And although at some point the failure to adjudicate within a reasonable time may entitle a Court to compel agency adjudication, Mysaev has not demonstrated, in this instance, a clear legal wrong which would entitle him to review under 5 U.S.C. § 555(b).

Because the APA does not supply the Court with subject-matter jurisdiction, the Court next considers whether the Mandamus Act does.

2. The Mandamus Act Does Not Supply the Court with Subject-Matter Jurisdiction

"[T]he test for jurisdiction [under the Mandamus Act] is whether mandamus would be an appropriate means of relief." *Family Rehab., Inc. v. Azar*, 886 F.3d 496, 506 (5th Cir. 2018) (quoting *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980)). Mandamus under 28 U.S.C § 1361 is a drastic remedy which is used in only the most extraordinary situations. *Kerr v. United States Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 402 (1976). To be entitled to this relief, the plaintiff must show "(his) right to issuance of the writ is 'clear and indisputable'" and "[he has] no other adequate means to attain the relief he desires." *Id.* at 403 (first quoting *Banker's Life & Cas. Co. v. Holland*, 346 U.S. 379, 384 (1953); and then citing *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943)); *see also Cheney v. United States Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 380 (2004).

Mandamus is not appropriate under these circumstances because there is no clear and indisputable right to which Mysaev is entitled nor has he exhausted every available means. *See Grover v. United States Citizenship & Immigr. Servs.*, 2021 WL 5040227, *1 (N.D. Tex. Oct. 28, 2021); *Kivlekar v. United States Citizenship & Immigr. Servs.*, 2021 WL 5040230, *1 (N.D. Tex. Oct. 28, 2021) (evaluating similar claims under a similar standard for clear and certain rights). As the Court found above, Mysaev has not established a legal wrong that entitles him to review under the APA. He therefore also fails to establish a clear and indisputable right to mandamus. *See Mehalingam*, No. 3:20-cv-03651-M, Doc. 13, 7 (citing *Dawoud v. Dep't of Homeland Sec.*, 2007 WL 4547863, at *8 (N.D. Tex. Dec. 26, 2007)). Additionally, Mysaev will have other adequate means to seek relief since his Claim One is dismissed without prejudice, allowing him to refile if, "at some point in the future, [his] petition[] ha[s] been unreasonably delayed." *Chuttani*, 2020 WL 7225995, at *5.

B.   *Mysaev Failed to Plead a Valid Due Process Claim*

Unlike Claim One, the Court has subject-matter jurisdiction over Claim Two because it involves a question arising under the United States Constitution. *See* 28 U.S.C. § 1331. Regardless of any jurisdiction-stripping arguments, 8 U.S.C. § 1252(a)(2)(D) expressly provides, "[n]othing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims." The Court thus turns to consider whether Mysaev has stated a valid Due Process claim.

To state a valid Due Process claim, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest."

*Greene v. Greenwood Pub. Sch. Dist.*, 890 F.3d 240, 242 (5th Cir. 2018) (quoting *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010)).

Mysaev's complaint alleges that USCIS's delay and failure to act has violated his protected liberty interest to fundamental fairness in administrative adjudication. Doc. 1, Compl., ¶¶ 23–24. USCIS argues that Mysaev has not identified a protected liberty interest because adjustment of status, and prompt adjudication of that interest, are not protected liberty interests. Doc. 7, Defs.' Br., 10. Mysaev responds that "fundamental fairness . . . is a prerequisite for judicial recognition of [administrative proceedings'] results." Doc. 10, Pl.'s Resp., 10 (quoting *Cruz v. Sullivan*, 802 F. Supp. 1015, 1017 (S.D.N.Y 1992)).

The Court agrees with USCIS that Mysaev has failed to identify a protected liberty interest and thus has failed to state a valid Due Process claim. Courts in the Fifth Circuit agree that adjustment of status and interests related to these proceedings are not protected liberty interests that can support a Due Process claim. *Smith*, No. 3:21-cv-2694-E, Doc. 21, 4; *Nyika v. Holder*, 571 F. App'x. 351, 352 (5th Cir. 2014) ("Because [plaintiff] had no liberty interest in adjustment of status, there can be no due process violation."); *Ohiri v. Gonzalez*, 233 F. App'x. 354, 356 (holding there was no liberty interest in right to effective assistance of counsel because there is no liberty interest in adjustment of status); *Mendias-Mendoza v. Sessions*, 877 F.3d 223, 228 (5th Cir. 2017) ("[F]ailure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest." (quoting *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004)).

Mysaev urges the Court to follow courts that have recognized violations of rights because of a failure to adhere to governing statutes and regulations. Doc. 10, Pl.'s Resp., 10 (citing *Bowen v. City*

*of New York*, 476 U.S. 467 (1986) and *Amberg v. F.D.I.C.*, 934 F.2d 681 (5th Cir. 1991)). But these cases dealt with conflicts between explicit statutory mandates and agency interpretation. *Amberg*, 934 F.2d at 688 ("Though the FDIC is free to establish necessary procedural mechanics, it may not give less than what Congress chooses to grant."); *Bowen*, 476 U.S. at 472 (evaluating arguments of equitable tolling and exhaustion in response to a sixty-day statute of limitations for appeal). No violation of a clear statute exists here because no statute specifically mandates that USCIS adjudicate the adjustment of status within a certain time. *See supra* Section III(A)(1)(ii). Mysaev has thus failed to state a valid Due Process claim, and Claim Two must be dismissed.

C. *Amendment is Futile on Claim Two Because Mysaev Has Not Pleaded a Valid Due Process Claim*

While "[t]he court should freely give leave [to amend] when justice so requires[,]" it need not do so when amendment would be futile. *See* Fed. R. Civ. P. 15(a)(2); *F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994). In determining whether amendment would be futile, the Court considers whether "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). Since Mysaev's claim of fundamental fairness in administrative proceedings is not a protected liberty interest that can support a Due Process claim, the Court finds that amendment would be futile and **DISMISSES WITH PREJUDICE** Claim Two. *See Mendias-Mendoza*, 877 F.3d at 228 ("[F]ailure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest." (quoting *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004)) (internal quotation marks omitted)).

## IV.

## CONCLUSION

For the reasons explained above, Mysaev has failed to establish subject-matter jurisdiction for Claim One and has failed to state a valid claim for Claim Two. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Claim One, and **DISMISSES WITH PREJUDICE** Claim Two.

**SO ORDERED**.

**SIGNED: July 18, 2022.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE